| | |
|---|---|
| TIMOTHY JASINSKI, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-726 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | |
| | **Jury Trial Demanded** |
| COLLECTO, INC. d/b/a EOS CCA, | |
| Defendant. | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Timothy Jasinski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5.      Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that he engaged in a consumer transaction.

6.    Defendant Collecto, Inc. d/b/a "EOS CCA" ("Collecto") is a debt collection agency with its principal offices located at 700 Longwater Drive, Norwell, MA 02061

7.    Collecto is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.    Collecto is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.    Collecto is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

10.    On or around March 6, 2018, Collecto mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "VERIZON WIRELESS." A copy of this letter is attached to this complaint as Exhibit A.

11.    Upon information and belief, the alleged debt referenced in Exhibit A was incurred for telecommunications services used only for personal, family, or household purposes.

12.    Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

13.    Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

14.    Upon information and belief, Exhibit A is the first written communication Collecto mailed to Plaintiff regarding this alleged debt.

15.    Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

2

Unless you dispute the validity of this debt, or any portion thereof, within thirty days after receipt of this notice, we shall assume the debt to be valid. If you notify us in writing of your dispute within this thirty-day period, we will obtain verification of the debt, or a copy of a judgment against you, and a copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

16. <u>Exhibit A</u> additionally includes the following representation:

| EOS CCA ACCOUNT # | CLIENT ACCOUNT # | PRINCIPAL | INTEREST | FEE | COLL. COSTS | BALANCE |
|---|---|---|---|---|---|---|
| ████9094 | █████0001 | $8,201.22 | $0.00 | $0.00 | $0.00 | $8,201.22 |
| | | | | | TOTAL DUE: | $8,201.22 |

17. <u>Exhibit A</u> threatens to collect "INTEREST," "FEE," and "COLL. COSTS." Although the amount of each in <u>Exhibit A</u> is $0.00, the letter implies that there could be interest or other fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv., Inc.*, No. 14-c-748, 2014 U.S. Dist. LEXIS 153281 (E.D. Wis. Oct. 28, 2014); *Bruchhauser v. Client Services, Inc.*, No. 17-cv-860, Dkt. No. 14, at *6-7 (Order Denying Motion to Dismiss) at *3-4 (E.D. Wis. Nov. 7, 2017); *Duarte v. General Revenue Corp.*, No. 17-cv-2754, 2017 U.S. Dist. LEXIS 188441, at *7-8 (N.D. Ill. Nov. 15, 2017); *Wood v. Allied Interstate, LLC*, No. 17-cv-4921, 2018 U.S. Dist. LEXIS 98738, at *6 (N.D. Ill. June 13, 2018); *Lemke v. Escallate, LLC*, No. 17-cv-5234, 2019 U.S. Dist. LEXIS 45152, at *7-9 (N.D. Ill. Mar. 19, 2019); *Duarte v. Client Servs.*, No. 18-c-1227, 2019 U.S. Dist. LEXIS 53900, at *5-9 (N.D. Ill. Mar. 29, 2019).

18. <u>Exhibit A</u> is confusing and misleading as to whether the balance of the account is increasing as a result of interest and non-interest fees.

19. The unsophisticated consumer reviewing <u>Exhibit A</u> would be confused and misled as to whether the references to "INTEREST," "FEE," and "COLL. COSTS" meant that the account was bearing interest, fees, and collection costs, and would not know whether the amount necessary to satisfy the debt was greater than the balance stated in <u>Exhibit A</u> by the time the consumer actually received <u>Exhibit A</u>. *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

3

20.     Upon information and belief, neither the creditor nor Collecto actually add interest or any other fees to consumer collection accounts like Plaintiff's.

21.     Where the account is not actually bearing interest, fees, and collection costs, the references to "INTEREST," "FEE," and "COLL. COSTS" confusingly and misleadingly imply to the unsophisticated consumer that it is bearing interest.  If the account is bearing interest, fees, and collection costs, the failure to clearly disclose that these charges are accruing is confusing and misleading.  *See Spuhler v. State Collection Servs.*, 2017 U.S. Dist. LEXIS 210895, at *18-19 (E.D. Wis. Dec. 22, 2017) (quoting *Chuway*, 362 F.3d at 949).

22.     Exhibit A fails to state the amount of the debt in a non-confusing manner.  The unsophisticated consumer would be confused as to whether Defendant was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

23.     The ambiguous zero amount itemizations could be interpreted in several different ways, only one of which may be correct:

> There are several possible ways the statement could be interpreted. For example, it is possible that, as the defendant suggests, an "unsophisticated consumer" might understand the statement to be explaining that no part of the debt is a 'collection fee' even though the Verizon agreement allows for one.  On the other hand, it is also possible that an "unsophisticated consumer" would interpret the statement to mean that there is no "collection fee" now but that one could be assessed later on.

*Tylke*, 2014 U.S. Dist. LEXIS 153281, at *6-7.

24.     The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction[.]"

25.     The apparent contradiction and confusion inherent in itemizing zero amounts is gratuitous.  Assuming these charges are not accruing, Exhibit A could have simply stated that interest, fees, and collection costs were not accruing, and Exhibit A would not have engendered

4

such gratuitous and unnecessary confusion. *See Duarte v. General Revenue Corp.*, 2017 U.S. Dist. LEXIS 188441, at *7-9 (N.D. Ill. Nov. 15, 2017) ("Clearly, a statement that the interest rate is zero cannot possibly be a threat to charge interest. To the contrary, it is more a concession that interest can't and won't be charged. In contrast, a cost balance of zero could imply future cost charges.").

26. The debt collector does not state the amount of the debt clearly if it ambiguously implies that the debt collector may be collecting accruing interest or fees when the balance is not actually increasing. *Chuway*, 362 F.3d at 947:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.

27. Furthermore, there is no explanation in the letter as to what the interest, collection costs, or other fees are or would be.

28. The unsophisticated consumer interprets references to "INTEREST," "FEE," and "COLL. COSTS" in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

29. Collecto, however, could not add any collection fees to Plaintiff's account.

30. The alleged debt referenced by <u>Exhibit A</u> is a "consumer credit transaction" under the WCA, Wis. Stat. §§ 421-427.

31. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an

5

open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

32. Plaintiff obtained the personal telecommunication services from the creditor with an agreement to defer pay. He is a "customer," pursuant to Wis. Stat. § 421.301(17).

33. The creditor is thus a "merchant" because it routinely provides property, services, or money on credit to consumers like Plaintiff. Wis. Stat. § 421.301(25).

34. Plaintiff's phone contract was for "services," namely wireless voice and data ("cellular") service.

35. Plaintiff's Verizon service contract was not a pre-paid contract.

36. Plaintiff's Verizon service contract was an extension of "credit." Wis. Stat. 421.301(14); *Murray v. New Cingular Wireless Servs.*, 432 F. Supp. 2d 788, 791 (N.D. Ill. 2006):

> [C]onsumers who sign up for a wireless phone plan are extended credit because they pay for service at the end of the month rather than buying the minutes in advance. ... At a minimum, a consumer must sign up for a plan that is $29.99, but this credit can extend into hundreds or thousands of dollars depending on the consumer's actual use and the plan selected. Virtually 100% of the wireless phone service purchased by the consumer would be on credit.

37. Plaintiff's Verizon service contract was payable in installments.

38. Under a wireless service contract, the consumer incurs an obligation to pay the entire amount of the contract monthly, over the contract's term.

39. For example, under a wireless service plan labeled "$50 per month" with a 2-year term, the consumer is obligated to pay, at a minimum, $1,200.00. The payments are made in 24 monthly installments of $50 each.

40. Additionally, most wireless service plans in which the consumer receives a "free" or "reduced price" phone spread the cost of the phone over the length of the contract term.

6

41.     Moreover, upon information and belief, Verizon contracts include fees, including but not limited to early termination fees, that are considered finance charges under Wisconsin law.

42.     The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

43.     Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

44.     Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit Collecto to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *see also, Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees "may" be added when they could not be, violated 1692e).

45.     The reference to "INTEREST," "FEE," and "COLL. COSTS" included in Exhibit A is therefore false, deceptive, and misleading to the unsophisticated consumer.

46.     Moreover, Exhibit A includes the following settlement offer:

VERIZON WIRELESS has authorized us to accept $4,920.73 to resolve this debt in full.

7

47. In addition to the settlement offer, <u>Exhibit A</u> also includes the following representation: "We are not obligated to renew this offer."

48. <u>Exhibit A</u> does not provide an expiration upon which the settlement offer listed would need to be renewed.

49. In the absence of an expiration date, the unsophisticated consumer would understand a statement that the debt collector is "not obligated to renew this offer," to mean that Collecto could, and would, rescind the settlement offer at any time and without notice. *See, Al v. Van Ru Credit Corp.*, No. 17-cv-1738, 2018 U.S. Dist. LEXIS 70321, at *8-10 (E.D. Wis. Apr. 26, 2018).

50. Upon information and belief, the debtor can settle the account for the amounts listed, or less, at any time.

51. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

52. While <u>Exhibit A</u> largely tracks this safe-harbor language, without an expiration date for the settlement offer, the language does not have its intended effect.

8

53.    As a practical matter, an unsophisticated consumer is not an FDCPA lawyer and does not know that the purpose of the statement that "we are not obligated to renew this offer" is to ensure an unsophisticated consumer would "realize that there is a renewal possibility but that it is not assured."

54.    An unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

55.    Without an expiration date, an unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" the settlement offer as an implied threat to revoke the settlement offer at any time and without notice.

56.    Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances. *E.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also, O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a

debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

57.     The safe-harbor language used in Exhibit A was created specifically for cases where a debt collection letter stated a settlement date certain, and without the payment date certain, the language does not have the effect the Seventh Circuit intended, and instead implies that the settlement offer may be withdrawn at any time. *See Al*, 2018 U.S. Dist. LEXIS 70321, at * 8-10.

58.     Moreover, the representation that "we are not obligated to renew this offer" is an express representation that timely payment is a material term of the offer.

59.     Collecto's failure to provide an expiration date for its settlement offer is a material misrepresentation because it confuses the unsophisticated consumer about a material term of the settlement offer.  *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

60.     The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying rather than disputing the debt.  *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

61.     The *Evory* language is especially confusing and misleading alongside the zero-amount line-times for "Interest," "Fees," and "Coll. Costs" because without a firm expiration

date, these representations taken as a whole imply to the consumer that the settlement offer will not be available once the debt collector adds these charges.

62.     Moreover, providing the settlement offer alongside the validation notice confuses, contradicts, and overshadows the consumer's validation rights.

63.     The settlement offer in Exhibit A is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

64.     The unsophisticated consumer, unsure when the settlement offer in Exhibit A expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment.  Thus, there is an apparent contradiction between the settlement offer "expiration" and the 30-day period during which the consumer may require validation.

65.     Because of this apparent contradiction, the unsophisticated consumer would be confused about whether the settlement offer in Exhibit A would require her to forego her rights to validate the debt.

66.     The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

11

67.     The plain language of Exhibit A is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

68.     Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit A, under the terms of Exhibit A, the debt collector might:

    a. Hold the payment in an escrow or suspense account pending verification of the debt;

    b. Interpret payment of the settlement amount as a "settlement in full" through accord and satisfaction or novation that contractually bars the consumer from requesting verification of the debt; or

    c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

69.     Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See, Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

70.     Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See, Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending

12

validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

71.     The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

72.     The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

73.     Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

74.     Ultimately, the settlement offer in <u>Exhibit A</u> fails to communicate whether settlement is actually contingent on foregoing validation, *i.e.,* whether not disputing the debt is a term of the offer.  *Compare, Sambor*, 183 F. Supp. 2d at 1243, *with, Betz v. MRS BPO, LLC*, No. 16-c-1161, 2017 U.S. Dist. LEXIS 63236, at *15 (E.D. Wis. Apr. 26, 2017) ("Nothing in the FDCPA suggests that a debt collector cannot give a consumer an incentive to simply settle the case *rather than dispute* that the debt is valid.") (emphasis added).

75.     Upon information and belief, the settlement offer is not contingent on the consumer foregoing validation, and is in fact available at any time.

13

76. Assuming the creditor did not make the settlement offer contingent on foregoing the right to seek verification, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

77. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30-day period in 15 U.S.C. 1692g(a). *See, Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

78. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names, or may be confused about how the amount of the debt had changed. *See, Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004).

79. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

80. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A. The unsophisticated consumer would believe that the settlement offer would expire before the debt collector provides verification and

14

would be left with little or no time to review the verification and determine whether to accept the settlement offer.

81.    The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

82.    Exhibit A did not provide explanatory language to describe how the unspecified expiration of the settlement offer that Defendant was "not obligated to renew" in Exhibit A fit together with the consumer's right to request verification. *See, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

83.    Any explanatory language should make clear whether a dispute would be construed as a rejection of the settlement offer, whether acceptance of the settlement offer would be construed as a novation, and whether the settlement offer would be extended pending verification in the event the consumer did in fact request verification.

84.    Furthermore, Exhibit A includes the following header:



EOS CCA
PO BOX 981002
BOSTON, MA 02298-1002

85.    Similarly, Exhibit A includes the following address block on the remittance slip:

EOS CCA
PO BOX 981025
BOSTON, MA 02298-1025

86.    Exhibit A, however, includes no reference to "Collecto, Inc."

87.    Collecto is incorporated as "Collecto, Inc." in the State of Massachusetts.

15

88.     Collecto is licensed as a 'Debt Collector" by the Division of Banks in the State of Massachusetts, the chartering authority and primary regulator for financial service providers in Massachusetts.  Collecto's license "Collecto, Inc."

89.     Collecto is a registered corporate entity with the Wisconsin Department of Financial Institutions, but Collecto has not registered any d/b/a.

90.     Exhibit A identifies Collecto only as "EOS CCA," and does not reference Collecto's corporate name.

91.     Plaintiff was misled and confused by Exhibit A.

92.     The unsophisticated consumer would be misled and confused by Exhibit A.

### The FDCPA

93.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt

16

collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

94. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

95.    15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

96.    15 U.S.C. § 1692e(2)(A) specifically prohibits debt collectors from making a false representation as to "the character, amount, or legal status of any debt."

97.    15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

98.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

99.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

100.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

101.    15 U.S.C. § 1692g provides:

(a) **Notice of debt; contents** - Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

102.    15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt

18

collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

103.    Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### The WCA

104.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

105.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

106.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

107.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

108. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

109. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

110. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

111. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

112. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

113. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

114. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I - FDCPA

115. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

116. By itemizing "INTEREST," "FEE," and "COLL. COSTS," Exhibit A falsely threatens to impose such charges, which Collecto and/or the creditor did not intend to impose, do not regularly impose in the ordinary course of business, and lack the legal authority to impose.

117. By itemizing "INTEREST," "FEE," and "COLL. COSTS," Exhibit A includes representations which are false, deceptive, and misleading as to the character, amount, and legal status of Plaintiff's alleged debt.

118. Defendant thereby violated §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692g(A)(1).

## COUNT II - WCA

119. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

120. By itemizing "INTEREST," "FEE," and "COLL. COSTS," Exhibit A falsely threatens to impose such charges, which Collecto and/or the creditor did not intend to impose, do not regularly impose in the ordinary course of business, and lack the legal authority to impose.

121. Defendant thereby violated §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III - FDCPA

122.    Plaintiff incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

123.    <u>Exhibit A</u> includes a settlement offer that is misleading as to whether the debt collector may revoke the offer of settlement at any time.

124.    <u>Exhibit A</u> effectively threatens to revoke the settlement offers at any time and without notice even though neither EOS nor the creditor intended to revoke these offers.

125.    By threatening to revoke the settlement offer at any time, <u>Exhibit A</u> overshadows the validation notice.

126.    Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and 1692g(b).

## COUNT IV – WCA

127.    Plaintiff incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

128.    <u>Exhibit A</u> includes a settlement offer that is misleading as to whether the debt collector may revoke the offer of settlement at any time.

129.    <u>Exhibit A</u> effectively threatens to revoke the settlement offers at any time and without notice even though neither EOS nor the creditor intended to revoke these offers.

130.    Defendant thereby violated §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT V - FDCPA

131.    Plaintiff incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

132.    Exhibit A fails to identify the true name of the debt collector and is thus misleading as to the identity of the debt collector.

133.    Defendant thereby violated §§ 15 U.S.C. §§ 1692e, 1692e(10), and 1692e(14).

## CLASS ALLEGATIONS

134.    Plaintiff brings this action on behalf of a proposed class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect an alleged debt incurred for personal, family, or household purposes, (d) between May 14, 2018, and May 14, 2019, inclusive, and (e) which was not returned by the postal service.

135.    The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

136.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and/or WCA.

137.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

138.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

139.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

140.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated: May 14, 2019

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Denise L. Morris (SBN 1097911)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        dmorris@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

24